IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 107,359

STEVE PETERSON, SAM EILERT, and RANDY HLAD,
*Appellees*,

v.

GARLAND P. FERRELL, III, d/b/a 4L GRAZING, LLC,
*Appellant.*

SYLLABUS BY THE COURT

1.

Whether a party has standing is a question of law over which appellate review is unlimited. In order to establish standing, a litigant must demonstrate that he or she suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct. A cognizable injury is one that affects the plaintiff in a personal and individual way. A party generally must assert his or her own legal rights and interests and may not base a claim for relief on the legal rights or interests of others.

2.

An appellate court exercises unlimited review when interpreting and determining the legal effect of contracts. Whether a contract has been breached is a question of fact.

3.

A district court's factual findings will not be disturbed on appeal if they are supported by substantial competent evidence. In other words, an appellate court will not reweigh the evidence but will accept the district court's findings so long as there is evidence in the record that reasonably supports the ultimate finding.

4.

The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.

5.

The correct measure of damages for breach of contract is a question of law subject to unlimited review. Generally speaking, when awarding contract damages, the goal is to put the nonbreaching party in the position he or she would have been in had the breach never occurred.

6.

When reviewing a remedy the trial court has fashioned to make the injured party whole, the test on appellate review is not whether the remedy is the best remedy that could have been devised, but whether the remedy so fashioned is erroneous as a matter of law or constitutes an abuse of trial court discretion. But while damage awards are discretionary, there must be some reasonable basis for computation which will enable the trier of fact to arrive at an approximate estimate thereof. When examining whether the evidence is insufficient to support a claim of damages because it is too conjectural or speculative, we examine the record in the light most favorable to the prevailing party.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 16, 2012. Appeal from Butler District Court; CHARLES M. HART, judge. Opinion filed June 5, 2015. Judgment of the Court of Appeals affirming in part, reversing in part, and remanding with directions to the district court is affirmed. Judgment of the district court is affirmed in part, reversed in part, and remanded with directions.

*Tim Connell*, of Connell & Connell, of El Dorado, argued the cause and was on the briefs for appellant.

*Richard E. Dietz*, of Dietz & Hardman, of Osborne, argued the cause and was on the briefs for appellees.

The opinion of the court was delivered by

STEGALL, J.: The Plaintiffs in this case—Steve Peterson, Sam Eilert, and Randy Hlad— sued Garland P. Ferrell, III, doing business as 4L Grazing, LLC (Ferrell), alleging Ferrell breached numerous grazing contracts while the Plaintiffs' cattle (including bulls, cows, and stocker cattle intended for the meat market) were supposed to be calving, fattening, and breeding on Ferrell's pastures during 2008. The Plaintiffs claimed that Ferrell failed in his duty to adequately feed, care for, and supervise their cattle.

The Plaintiffs further alleged that Ferrell's breach caused damages in the form of: (1) a higher than expected number of open, unbred cows; (2) bulls and cows with deteriorated body conditions; (3) bulls that either died or were so deteriorated that they had to be sold for salvage; and (4) stocker cattle that did not gain the expected weight. The matter proceeded to a bench trial, and the district court found Ferrell had breached the grazing contracts. The court awarded a total of $240,416.90 of damages to compensate the Plaintiffs for the reduced value of the unexpected open cows, the lost expectation value of calves never conceived, the costs associated with rehabilitating the body condition of the bulls and cows, the lost value of dead and salvaged bulls, and the reduced value of stocker cattle that did not put on expected weight.

Ferrell appealed the matter to the Court of Appeals, arguing that the district court erred by refusing to dismiss Peterson's claims, by finding that Ferrell breached the contracts, and by relying on erroneous methods of damage calculation and awarding damages not supported by sufficient evidence. A panel of the Court of Appeals found that

3

Peterson did not have standing and dismissed his claims. The panel affirmed the district court's finding of a breach of the grazing contracts and affirmed the district court's damage award in most respects. The panel did, however, remand the damage award to the district court to correct three errors: (1) to limit the damages for unexpected open cows to the difference in value between a bred cow and an open cow without also awarding the lost expectation value of calves never conceived; (2) to conform the award for rehabilitation costs to the competent evidence presented below; and (3) to determine the exact amount of damages properly attributable to the cattle owned by Eilert and Hlad individually and to limit and itemize the award accordingly. *Peterson v. Ferrell*, No. 107,359, 2012 WL 5869622 (Kan. App. 2012) (unpublished decision), *rev. granted* December 27, 2013.

The parties timely appealed from the decision of the Court of Appeals. The Plaintiffs asked us to review the question of Peterson's standing and the question of awarding damages for calves never conceived. Ferrell sought review on the questions of breach and damages. We granted both petitions pursuant to K.S.A. 20-3018(b). We exercise jurisdiction pursuant to K.S.A. 60-2101(b) and affirm the judgment of the Court of Appeals affirming in part, reversing in part, and remanding to the district court with directions. The judgment of the district court is affirmed in part, reversed in part, and remanded with directions.

FACTUAL BACKGROUND

We begin by summarizing the evidence presented at trial. Some of the Plaintiffs' cattle had spent the 2007 winter on Ferrell's ranch. In the early spring 2008, the cattle began experiencing a difficulty known as "going down"—describing an inability to stand up. Ferrell's ranch manager, Jamie Nelson, called in veterinarian Dr. Roger Bechtel who

4

diagnosed malnutrition and prescribed a magnesium solution and more food. Nelson followed Dr. Bechtel's recommendation, and the cattle seemed to improve.

In May 2008, the Plaintiffs transported additional cattle to the ranch; but by July, new problems emerged. An outbreak of pneumonia afflicted the calves and was only partially treated. Nelson left Ferrell's employment on July 10 but returned briefly between July 17 and 23. On his return, Nelson noted that the stocker cattle were in the same paddock as the day he left. In Nelson's opinion, Ferrell's failure to rotate grazing paddocks left the cattle stressed and without grass, causing significant weight loss.

The district court heard testimony that the average conception rate for a herd of cows like the Plaintiffs' herd was between 90 and 96 percent. By October 2008, however, Dr. Bechtel had determined that the overall conception rate for the Plaintiffs' cows was 83 percent. Dr. Bechtel noted during the October check that the cattle were underweight with body condition scores of threes and fours, with some twos. Body condition score is a rating between one and nine to assess the degree of flesh on a cow, with five being optimal. An animal with a less than optimal body score is less likely to conceive a calf. Dr. Bechtel testified that in 2006 and 2007 the cows at Ferrell's ranch had conceived at normal conception percentage rates in the mid- to low-90s and had body scores of 5s and 6s.

Many other witnesses testified the cattle were malnourished and afflicted with a variety of health deficits. Two bulls died soon after leaving Ferrell's ranch, and two others had to be sold for salvage value. The remaining cattle required significant rehabilitation. Additional facts will be added when relevant to our discussion of the various arguments made by the parties.

ANALYSIS

1.      *Peterson Does Not Have Standing*

The Court of Appeals found Peterson lacked standing because he was not the true owner of the cattle. The panel dismissed Peterson's claims and reversed the damages awarded to him. *Peterson*, 2012 WL 5869622, at *4. Peterson disputes this holding.

Standing is a component of subject matter jurisdiction, and whether a party has standing is a question of law over which appellate review is unlimited. See *Gannon v. State*, 298 Kan. 1107, 1122, 319 P.3d 1196 (2014) (citing *Cochran v. Kansas Dept. of Agriculture*, 291 Kan. 898, 903, 249 P.3d 434 [2011]). As it is a component of subject matter jurisdiction, it may be raised at any time and on an appellate court's own motion. *Ternes v. Galichia*, 297 Kan. 918, 921, 305 P.3d 617 (2013).

In order to establish standing, a litigant must "'"demonstrate that he or she suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct."'" *Gannon*, 298 Kan. at 1123 (quoting *Cochran*, 291 Kan. at 908). To demonstrate a cognizable injury, "[t]he injury must be particularized, *i.e.*, it must affect the plaintiff in a '"personal and individual way."'" *Gannon*, 298 Kan. at 1123 (quoting *Sierra Club v. Moser*, 298 Kan. 22, 35, 310 P.3d 360 [2013]). Similarly, "[a] party generally must assert its own legal rights and interests and may not base its claim to relief on the legal rights or interests of third parties." *Ternes*, 297 Kan. at 922.

Peterson's claims arise out of two different contracts. The first is between Ferrell and "STEVE PETERSON d.b.a. Oak Creek Land and Cattle Company, Inc.," while the second is between Ferrell and "MPK Land & Livestock, LLC." Peterson testified that Oak Creek Land and Cattle was actually a limited liability company that owned the cattle subject to the first contract. As to the second contract, Peterson testified that a

6

partnership, not MPK Land & Livestock, actually owned those cattle. Most importantly, Peterson never testified that he owned any of the cattle in his personal capacity—he affirmatively admitted he was not personally the owner.

Regardless of the corporate or partnership form used, Oak Creek Land and Cattle, MPK Land & Livestock, and an unnamed partnership are all legal entities separate and distinct from Peterson. See K.S.A. 17-7673(b); K.S.A. 56a-201(a). As such, Peterson cannot show the injury affected him in a personal way, and he cannot assert the claims of another. Because Peterson has failed to come forward with any evidence that he personally owned any of the cattle in question, he cannot meet his burden to demonstrate a cognizable injury personal to him. The Court of Appeals correctly found that Peterson has no standing.

II.     *Ferrell Breached the Grazing Contract*

Each remaining contract (following the dismissal of Peterson's claims) contained the following identical language:

> "GRAZER'S DUTIES:  Grazer shall provide adequate grass and water for Owner's cattle as nature shall provide. Grazer shall provide feed and mineral to Owner's cattle according to the seasonal, nutritional needs of Owner's livestock. Grazer shall send a copy of the monthly pasture log to Owner with the monthly billing.

> "Grazer agrees to routinely monitor the condition of Owner's cattle and provide prudent veterinary care when necessary. Grazer agrees to maintain reasonable vigilance over Owner's cattle and manage the grazing of said cattle so as to optimize the quality of grass available to them. Grazer shall also provide, at his expense, labor for handling Owner's cattle including, but not limited to, receiving, spring calf working, pre-conditioning, weaning (on to a truck), and seasonal shipping arranged by Owner."

7

Ferrell argues the lower courts erred in finding he breached the grazing contracts. He argues the contracts only required that he supply water and grass as nature availed. The Court of Appeals disagreed and held that Ferrell was also obligated to provide veterinary care, to monitor the condition of the cattle, to provide food and minerals according to the cattle's needs, and to manage grazing to optimize grass quality. *Peterson*, 2012 WL 5869622, at *5.

We exercise unlimited review when interpreting and determining the legal effect of contracts. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014). But whether a contract has been breached is a question of fact. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 964, 298 P.3d 250 (2013). A district court's factual findings will not be disturbed on appeal if they are supported by substantial competent evidence. In other words, an appellate court will not reweigh the evidence but will accept the district court's findings so long as there is evidence in the record that reasonably supports the ultimate finding. See *Gannon*, 298 Kan. at 1175-76; *Webber v. Automotive Controls Corp.*, 272 Kan. 700, 705, 35 P.3d 788 (2001).

"'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Waste Connections*, 296 Kan. at 963 (quoting *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 [2011]). The grazing agreements are agistment contracts, the main object of which "is the furnishing of pasture land on which the cattle might graze and gain weight." *Lips v. Opp*, 150 Kan. 745, 752, 96 P.2d 865 (1939).

> "'In the absence of special agreement, an agistor is bound to exercise ordinary diligence in keeping, feeding, sheltering, and otherwise caring for animals committed to his custody, and is liable for loss or injury to the animals resulting from his breach of such duty; exercise of ordinary care satisfies the agistor's obligations, he is not an insurer; and he may not be held responsible for loss or damage occurring without his fault. '"
> *Hughes v. Atkinson*, 188 Kan. 413, 421, 362 P.2d 618 (1961) (quoting 3 C.J.S., Animals § 17, pp. 1108-09).

Ferrell relies on the rule that an agistment contract does not make the agistor an insurer or guarantor of good results for the owner's animals. He notes that the contracts did not guarantee the Plaintiffs' cattle would attain any specific body score or conception rate. But here Ferrell gets the causation chain backwards. He is correct insofar as the fact the cattle were malnourished or underbred could not create a breach of the contracts because no results were guaranteed. These facts, however, are evidence of harm that may have been caused by Ferrell's failure to meet the contractual obligations he did undertake. Absent a guarantee, a bad result only raises—it does not answer—the question of breach.

Ferrell contends that his only duty was to supply the cattle with all the grass and water nature provided—and that to impose any additional duty would render the contractual term "as nature shall provide" without meaning. We are not convinced. In fact, the plain, clear, and unambiguous terms of the contracts establish that Ferrell promised to: (1) "provide feed and mineral," according to the needs of the cattle; (2) "to routinely monitor" the health of the animals; (3) to provide them "prudent veterinary care when necessary"; (4) "to maintain reasonable vigilance" over the cattle; and (5) to manage grazing "so as to optimize the quality of grass available to" the cattle. These are all duties imposed on Ferrell by the clear language of the agreements above and beyond simply allowing the cattle to forage for what they could find on Ferrell's ranch.

9

After a complete review of the evidence presented below, we are convinced that the district court's finding that Ferrell breached these duties is supported by substantial competent evidence. When there is substantial evidence to support the findings of the district court, it is immaterial if there was contrary evidence presented which, if believed, would support a different outcome. *Clark v. Clark*, 236 Kan. 703, 704, 696 P.2d 1386 (1985). There was evidence given at trial that the animals were not given nutrition adequate to their needs, that their grazing was not managed to optimize grass intake, and that their health was not adequately monitored or treated. While contrary evidence also appears below, we will not reweigh the evidence and are satisfied that the record evinces sufficient support for a reasonable factfinder to conclude that Ferrell breached the contracts.

III.  *The Court of Appeals Correctly Resolved the Question of Damages*

The correct measure of damages for breach of contract is a question of law subject to unlimited review. *Louisburg Building & Development Co. v. Albright*, 45 Kan. App. 2d 618, 638, 252 P.3d 597 (2011). Generally speaking, when awarding contract damages, the goal is to put the nonbreaching party in the position he or she would have been in had the breach never occurred. *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 789, 107 P.3d 1219 (2005). When reviewing a remedy the trial court has fashioned to make the injured party whole, "'the test on appellate review is not whether the remedy is the best remedy that could have been devised, but whether the remedy so fashioned is erroneous as a matter of law or constitutes a breach of trial court discretion.'" *In re Conservatorship of Huerta*, 273 Kan. 97, 99-100, 41 P.3d 814 (2002) (quoting *Gillespie v. Seymour*, 250 Kan. 123, Syl. ¶ 10, 823 P.2d 782 [1991]).

Thus, while damage awards are discretionary, "there must be some reasonable basis for computation which will enable the trier of fact to arrive at an approximate

10

estimate thereof." *Stewart v. Cunningham*, 219 Kan. 374, 381, 548 P.2d 740 (1976). On review, appellate courts do not reweigh evidence or pass upon the credibility of witnesses. *In re Estate of Farr*, 274 Kan. 51, 68, 49 P.3d 415 (2002). When examining whether the evidence is insufficient to support a claim of damages because it is too conjectural or speculative, we examine the record in the light most favorable to the prevailing party. See *Shirley v. Smith*, 261 Kan. 685, 694, 933 P.2d 651 (1997); *Southwind Exploration v. Street Abstract Co.*, 42 Kan. App. 2d 122, 130, 209 P.3d 728 (2009).

The parties appeal a number of different aspects of the lower courts' handling of the damage claims. First, both parties appeal aspects of the damages awarded to compensate the Plaintiffs for unexpected open cows. Next, Ferrell appeals the damages awarded to compensate the Plaintiffs for rehabilitation costs. And finally, Ferrell appeals the damages awarded to compensate the Plaintiffs for the dead and salvaged bulls. We will address each category of damages in turn.

First, the district court found Ferrell's breach caused a higher than expected number of open cows. It awarded damages based on an expected conception rate of 92 percent. It found the difference in value between an open cow and a bred cow to be $600 and awarded this amount for every open cow below the 92 percent conception rate. In addition, the district court awarded the Plaintiffs the value of the "lost crop" of never conceived calves. The Court of Appeals upheld the award based on open cows below the 92 percent conception rate but found the lost crop damages would constitute a windfall for the Plaintiffs. *Peterson*, 2012 WL 5869622, at *7-8. Each party petitioned for review from the adverse aspect of this decision.

On the one hand, we find no error in the panel's decision to limit the damages associated with unexpected open cows. The Plaintiffs argue that by only awarding the

11

difference in value between an open and a bred cow, the Court of Appeals erroneously prevented them from realizing the value of the lost crop—*i.e.*, the never conceived calves. The Court of Appeals relied on the general rule that a proper damage award will put the aggrieved party in the position he or she would have been in but for the breach and found that, had the contract been performed, the Plaintiffs would have had bred cows, not market-ready calves. 2012 WL 5869622, at *7-8.

The panel explained that the Plaintiffs "could never utilize the value of both bred cows and their calves because those things do not exist simultaneously." 2012 WL 5869622, at *8. The Plaintiffs' insistence on appeal that they *would* have had the calves is not a valid economic objection. In fact, in terms of the economic expectations of the Plaintiffs, the difference in market value between a bred cow and an open cow *is effectively the value of a market calf* after applying a discount rate comprised of the risk factors and cost inputs associated with taking a calf in utero through calving, weaning, and raising to market.

On the other hand, Ferrell reprises his argument that because the contracts did not guarantee a specific conception rate, any measure of damages utilizing a conception rate is legally infirm and unsupported by the evidence. As already explained, Ferrell confuses concepts of breach with a measure of damages. Ferrell did not breach the contracts because the cattle did not achieve a 92 percent conception rate; rather, the cattle did not achieve a 92 percent conception rate because Ferrell breached the contracts. This conclusion does not make Ferrell a guarantor of results. He may, however, be held liable for bad results caused by his breach.

Here, the 92 percent conception rate utilized by the district court was an estimate reasonably derived from the evidence presented of the conception rate that the Plaintiffs' cows would have obtained had there been no breach. Numerous witnesses at trial testified

12

as to an average conception rate for ranches in Ferrell's area. The testimony ranged from 89 percent at the lowest to 96 percent at its highest. However, most witnesses testified to ranges between 90 to 95 percent, which was also identified as the industry standard. The district court did not err in this regard.

In the second category of damages, the district court found the Plaintiffs were entitled to recover the costs associated with rehabilitating the body condition of the cows and bulls. The district court found that to properly rehabilitate each animal would require a 200-pound weight gain for each cow and a 300-pound weight gain for each bull. The court further found that it would cost the Plaintiffs 80 cents for each pound of weight gain. The Court of Appeals found the weight-gain amounts were supported by the evidence but the per-pound cost was based on inadmissible evidence. As such, the panel reversed this component of the damage award and remanded for a damage calculation that conforms to the evidence presented below. *Peterson*, 2012 WL 5869622, at *8-10.

Ferrell challenges this award on familiar grounds, claiming first that it is legally inappropriate because the contracts did not guarantee the Plaintiffs' cattle would attain a specific body score; and second, that the award was based upon insufficient evidence. As before, the measure of damages utilized by the district court was appropriate as an effort to put the Plaintiffs in the position they would have been in but for Ferrell's breach. Various witnesses testified that it could take as little as 75 pounds or as much as 200 pounds to raise a cow's body condition by one body score. Peterson testified the bulls would need to put on 300 pounds in order to be rehabilitated. The district court's weight gain findings were supported by the evidence.

As to the per pound cost multiplier, the Court of Appeals found the figure of 80 cents per pound was not supported by the evidence because it was only found in Peterson's testimony—and Peterson was merely reciting a figure he had heard from Dr.

13

K.C. Olson. Dr. Olson, however, testified to a different per-pound cost multiplier. Quoting *Manhattan Ice & Cold Storage v. City of Manhattan*, 294 Kan. 60, 75-76, 274 P.3d 609 (2012), the Court of Appeals ruled that a property owner cannot merely parrot the opinions of experts as evidence of fair market value. *Peterson*, 2012 WL 5869622, at *9. Neither party specifically sought review of this portion of the Court of Appeals decision, so we need not address it on the merits. We do note, however, that on remand the district court must confine itself to the record already before it—that is, excluding Peterson's testimony, did the Plaintiffs establish with sufficient particularity the cost per pound of rehabilitation weight gain? If they did not, Ferrell is correct that this claim for damages must fail for lack of proof. See *Cerretti v. Flint Hills Rural Electric Co-op Ass'n*, 251 Kan. 347, 362, 837 P.2d 330 (1992) (plaintiffs bear burden to prove their damages).

The final contested category of damages concerns the dead and salvaged bulls. The district court found that the proper measure of damages for the Plaintiffs' lost bulls was the cost of virgin 2-year-old bulls. Testimony at trial established that due to the risk of the spread of venereal disease in herds of cattle, there was effectively no market for "used bulls." As such, in order to restore the Plaintiffs to the position they would have been in but for the breach—*i.e.*, with serviceable bulls ready for breeding—the district court awarded replacement costs equal to the value of virgin bulls. The Court of Appeals found the evidence was sufficient to support such a finding, *Peterson*, 2012 WL 5869622, at *9, and we agree.

Ferrell now argues the award amounts to a windfall for the Plaintiffs as the lost bulls were older than a virgin bull. The evidence, however, demonstrated the lost bulls were in their peak breeding years. Moreover, expert testimony indicated that a rancher should never purchase a used bull for breeding due to the risk of introducing trichimoniasis, a venereal disease, into the herd. Given this, a reasonable factfinder could

14

find that the replacement cost award must be sufficient to enable the purchase of disease-free bulls—otherwise the Plaintiffs would be in a worse position than they would have been but for the breach. And the only market in bulls guaranteed to be disease-free is the market in virgin bulls. The lower courts did not err in this respect.

The judgment of the Court of Appeals affirming in part, reversing in part, and remanding with directions to the district court is affirmed. The judgment of the district court is affirmed in part, reversed in part, and remanded with directions to the district court to enter an itemized damage award to Eilert and Hlad that conforms to the evidence presented at trial.

LUCKERT, J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 107,359 vice Justice Luckert under the authority vested in the Supreme Court by K.S.A. 20-2616.