NOT DESIGNATED FOR PUBLICATION

No. 115,951

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LONNIE GEIER,
*Appellant*,

v.

TRI-VALLEY DEVELOPMENTAL SERVICES, INC.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Bourbon District Court; TERRI L. JOHNSON, judge. Opinion filed April 21, 2017.
Affirmed.

*Fred Spigarelli* and *Angela Spigarelli*, of The Spigarelli Law Firm, of Pittsburg, for appellant.

*Spencer L. Throssell* and *Michael A. Preston*, of Yeretsky & Maher, L.L.C., of Overland Park, for
appellee.

Before STANDRIDGE, P.J., MCANANY, J., and HEBERT, S.J.

*Per Curiam*: This negligence action arose as the result of a bus driven by an
employee of Tri-Valley Developmental Services, Inc. (Tri-Valley), turning left in front of
an oncoming truck and trailer being operated by David Buergin. The following facts are
distilled from the uncontroverted facts that ultimately led to the district court granting
summary judgment to Tri-Valley and to this appeal.

At the time of the collision Buergin was operating the truck in the scope and
course of his employment with G & C Custom Hay Company, Inc., a Kansas corporation
(G & C). The collision resulted in the death of the bus driver and one of the bus

1

passengers and temporarily incapacitating personal injuries to Buergin. The truck was a total loss and its trailer was damaged, but those losses are not a part of this suit.

G & C was engaged in reselling and transporting hay grown by others, typically in western Kansas, to G & C's customers in southeast Kansas. G & C hired Buergin as a truck driver/hay hauler and paid him a percentage of the profit on each load of hay. Buergin was highly qualified in inspecting and evaluating the quality of hay before it was purchased by G & C for resale.

As a result of the accident and his injuries, Buergin was off work for a period of about 6 weeks. Lonny Geier, the owner and president of G & C, was unsuccessful in finding a temporary replacement for Buergin, and the business lost profits and customers as a result of Buergin being unavailable.

Geier also operated his own farming operation. At the time of the collision, Geier was in the process of mowing and baling for sale a field of corn stalks on 189 acres he owned. This tract apparently was located somewhere other than at the scene of the collision. Geier's mowing and baling operation was interrupted by a phone call informing him of the collision. Geier left the corn field unattended in order to tend to the collision. During the night that followed, a rain storm soaked the corn stalks and rendered them unsaleable.

Geier brought this negligence action in his individual capacity against Tri-Valley, claiming that G & C sustained damages in the form of lost profits and lost customers. He also claimed he sustained damages from the loss of the corn stalks ruined in the overnight rain following the accident.

Tri-Valley moved for summary judgment, claiming Geier lacked standing to bring this action in his personal capacity for the lost profits and customers of G & C, a

2

corporation he owned. Tri-Valley also argued that the collision was not the proximate cause of the damages to Geier's corn stalks and that this damage was caused by the intervening rain storm and Geier's failure to cover the corn stalks in anticipation of the storm.

Three weeks after oral argument on Tri-Valley's motion, and without leave of court, Geier submitted additional documents and factual contentions in an attempt to establish that he individually and personally owned the hay brokerage business. But the district court disregarded these late submissions and granted Tri-Valley's motion. This appeal followed.

As is well known to the parties, our review of Tri-Valley's summary judgment motion is de novo. But before conducting that de novo review, we need to address Geier's complaints about the manner in which the district court considered the evidence.

*Disregarding Additional Documents and Contentions*

Geier's primary evidentiary contention is that the district court erred in disregarding his submission of additional documents and factual contentions. Geier claims the court erred in disregarding these documents and contentions in granting Tri-Valley's summary judgment motion and later in denying Geier's motion to reconsider. (With respect to Geier's arguments in the context of his motion to reconsider, we will address them later in this opinion.)

Geier also asserts that the district court erred in considering all of Tri-Valley's uncontroverted facts and in considering a Kansas Secretary of State record that Tri-Valley attached to its memorandum in support of its summary judgment motion.

3

We review these claims for any abuse of the district court's discretion. See *Ruebke v. Globe Communications Corp.*, 241 Kan. 595, 604, 738 P.2d 1246 (1987) (Supreme Court Rule 141 "vests discretion in the trial court whose sound discretion will not be disturbed on appeal without a clear showing of abuse."). A judicial action constitutes an abuse of discretion if the action is: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. The party asserting the district court abused its discretion bears the burden to show it. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

With respect to Geier's additional documents and factual contentions, they were submitted 3 weeks after oral argument on Tri-Valley's motion. They were submitted in order to create a triable issue of fact on the issue of Geier's standing to bring a lost profit and lost customers claim, issues that were central to Tri-Valley's motion from the start. Geier argues that he submitted them "primarily in response to [the district court's] question in oral argument." But the district court stated it disregarded them because (1) Geier never sought permission to file additional documents and the court never requested them; and (2) Geier failed to attach accompanying affidavits showing the documents' accuracy and completeness or providing foundation for their admissibility in evidence.

Supreme Court Rule 141 (2017 Kan. S. Ct. R. 204) sets forth the procedure for summary judgment motions. Under the Rule, a summary judgment motion must be accompanied by a supporting memorandum. The opposing party has 21 days to respond. To controvert a factual contention, the opposing party must summarize and cite to some conflicting evidence. If the opposing party does not respond to the motion within 21 days, the movant's factual contentions are deemed admitted for purposes of the summary judgment motion. If the opposing party does respond, the movant has 14 days to file a reply. Once either the movant has filed a reply or the time for the movant to reply has expired, the summary judgment motion is ripe for a final decision.

4

Here, after obtaining a time extension, Geier filed a timely response to Tri-Valley's summary judgment motion. In doing so, Geier had the opportunity to controvert Tri-Valley's factual contentions by summarizing the conflicting evidence and positing additional claimed uncontroverted material facts to preclude summary judgment. Indeed, Geier did contest some of Tri-Valley's factual contentions and set forth additional uncontroverted material facts. After Tri-Valley filed its reply brief, the district court heard oral arguments on the motion. At that point, Tri-Valley's motion was ripe for a final decision. Then, without the district court's permission, Geier submitted additional documents and arguments. But Supreme Court Rule 141 did not obligate the district court to consider these untimely submissions, and the district court acted within its discretion in choosing not to consider Geier's late submissions.

Geier also challenges the district court's alternative basis for disregarding his submission of additional documents and factual contentions: that the documents were not supported by an accompanying affidavit certifying to their accuracy and completeness or providing a foundation for their admissibility as evidence. Geier maintains that, because Tri-Valley did not object to the additional documents, the district court should not have *sua sponte* determined the documents were inadmissible in evidence. But because, as we have just discussed, the district court had another valid reason for rejecting this late submission, this issue is now moot.

*Adequacy of References to the Record*

Geier also criticizes the district court's consideration of Tri-Valley's claimed uncontroverted facts because Tri-Valley referenced only transcript page numbers in supporting deposition testimony without citing the specific lines on the page. Supreme Court Rule 141(a) (2017 Kan. S. Ct. R. 204) requires for each claimed uncontroverted fact "precise references to pages, lines and/or paragraphs . . . of the portion of the record on which the movant relies." But the district court noted that it "was able to easily follow

5

what support [Tri-Valley was] relying on for [its] facts. Therefore, the Court will consider those facts." Like the district court, in our de novo review we have no problem tracking the deposition testimony that Tri-Valley relies on to support its claimed uncontroverted material facts. Accordingly, we find no abuse of the district court's discretion in this regard.

Next, Geier criticizes the district court's consideration of the records of the Kansas Secretary of State showing that Geier was president, secretary, treasurer, and director of G&C Hay Company, Inc. because Tri-Valley failed to demonstrate the record's accuracy by an accompanying affidavit. But Geier did not object to Tri-Valley's reliance on the Kansas Secretary of State record and, more importantly, Geier *did not controvert* the factual contention that relied on this record for support. Besides, the district court could take judicial notice of such public records of the Kansas Secretary of State. See *Harris v. Shanahan*, 192 Kan. 183, 207, 387 P.2d 771 (1963) (A court may take "judicial notice of any and all official publications of . . . the Secretary of State of Kansas."). The district court did not abuse its discretion in considering this record.

*Review Standards for Summary Judgment*

Turning to the merits of Tri-Valley's motion, we are not concerned with Geier's criticism of the district court's legal reasoning in granting the motion because our review is de novo. In considering Tri-Valley's motion, we apply the same rules that applied to the district court's consideration of the motion. See *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011). Under these rules, summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 2016 Supp. 60-256(c)(2). In our review we resolve all facts and inferences which may reasonably be drawn from the evidence in favor of Geier, the party against whom the summary judgment motion

6

was sought. We will deny the motion if reasonable minds could differ as to the conclusions drawn from the evidence. See *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014).

To successfully oppose Tri-Valley's motion, it was incumbent on Geier to come forward with evidence to establish a disputed fact which was material to the conclusive issues in the case which had to be resolved at trial. But if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co.*, 296 Kan. at 934.

When a plaintiff lacks evidence to establish an essential element of the claim, there can be no genuine issue of material fact because a complete failure of proof concerning an essential element of the plaintiff's case renders all other facts immaterial. *Crooks v. Greene*, 12 Kan. App. 2d 62, 64-65, 736 P.2d 78 (1987). Thus, summary judgment is appropriate if the movant can establish the absence of evidence necessary to support an essential element of the nonmoving party's case. *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 318, 241 P.3d 75 (2010).

In actions based on negligence, summary judgment should be granted with caution. *Apodaca v. Willmore*, 51 Kan. App. 2d 534, 538, 349 P.3d 481 (2015), *rev. granted* 303 Kan. 1077 (2016). See *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998). But summary judgment in a negligence action is proper if the only questions presented are questions of law. *Martin v. Naik*, 297 Kan. 241, 245, 300 P.3d 625 (2013).

■ *Standing*

Geier brought a claim for lost profits and customers in his individual capacity. G & C Custom Hay Company, Inc., a Kansas corporation, is not a party to this action. Tri-

7

Valley argued that any loss of G & C's profits and customers was damage to the corporation, not to Geier individually. Thus, Geier had no standing to bring the claim.

To have standing to pursue his claim for lost profits and customers, the losses Geier claims must be his losses and not the losses of a separate entity. See *Peterson v. Ferrell*, 302 Kan. 99, 103, 349 P.3d 1269 (2015). Thus, the lost profits and customers must not have been sustained by G & C Custom Hay Company, Inc., because G & C is a separate legal entity and not a mere extension of Geier, its owner. See 302 Kan. at 103. "Shareholders do not have standing to sue for harms to the corporation or even for the derivative harm to themselves that might arise from a . . . wrong to the corporation." *Lightner v. Lightner*, 46 Kan. App. 2d 540, Syl. ¶ 3, 266 P.3d 539 (2011), *rev. denied* 297 Kan. 1246 (2013).

In *Peterson*, a cattle owner sued a rancher, alleging the rancher breached two grazing contracts. The evidence showed that one of the contracts was between the rancher/defendant and a limited liability company and the other between the rancher/defendant and a partnership. On review, the Kansas Supreme Court held: "Regardless of the corporate or partnership form used . . . all legal entities [were] separate and distinct from [the cattle owner]." 302 Kan. at 103. The Supreme Court explained that the cattle owner could not show that breach of contracts affected him in a personal way and, thus, the cattle owner lacked standing to assert the claims of another.

Here, in setting forth its claimed uncontroverted material facts, Tri-Valley identified and referred to G & C Custom Hay Company, Inc., a Kansas corporation, as G & C. In responding to Tri-Valley's motion, Geier admitted the following uncontroverted material facts: (1) he owned G & C; (2) G & C was engaged in growing and brokering hay; (3) G & C employed Buergin as a truck driver/hay hauler; and (4) at the time of the collision, Buergin was in the scope and course of his employment with G & C.

Geier countered that it was also uncontroverted that he was a self-employed farmer and hay broker and that he grows hay for sale and buys hay from others. But nowhere in the claimed uncontroverted facts does Geier contend that the particular load of hay being hauled at the time of the collision was being hauled by or for a person or entity other than G & C, the corporation he owned. Further, Geier claimed the lost profits and customers were caused by Buergin being incapacitated by his injuries from the collision and being unable to work. But Geier admitted that at the time of the collision Buergin was operating in the scope and course of his employment with G & C, not some other person or entity.

Geier attempts to avoid the logical consequence of these facts by arguing that he and Buergin were engaged in a joint venture. But there are no characteristics of a joint venture here to support such an argument. There was no joint ownership and control of property of the claimed joint venture. There was no evidence of shared expenses or losses. There was no evidence that Geier consulted with Buergin about the operation of the venture or the division of its profits. We see no indication that Buergin was anything other than a hired employee of G & C. In fact, Geier conceded that it was an uncontroverted fact that at the time of the collision Buergin was in the scope and course of his employment with G & C.

Finally, as discussed earlier, Geier attempted to create an issue of fact on this issue of standing by belatedly relying on unsupported documents that lacked evidentiary value in the form presented. Tri-Valley cited *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 531, 739 P.2d 444 (1987), to the district court for the proposition that Geier's submissions in opposition to Tri-Valley's motion needed to be of evidentiary value in order to create a genuine issue of material fact for trial and, here, Geier's submissions were not.

9

Based upon the uncontroverted facts, Geier lacked standing to bring this action for lost profits and customers when any such claim properly belonged only to the corporation he controlled. The district court did not err in so concluding.

■ *Proximate Cause*

The issue of proximate cause arose from Geier's claim for the loss of his corn stalks. It is axiomatic that a negligence action such as we find here must be predicated on (1) existence of a duty; (2) breach of that duty; (3) injury; and (4) proximate cause, *i.e.*, causal connection between the duty breached and the injury suffered. *Hale v. Brown*, 287 Kan. 320, 322, 197 P.3d 438 (2008).

Ordinarily, proximate cause is a question of fact and reserved for the trier of fact. But the Kansas Supreme Court has consistently recognized that proximate cause becomes a question of law when all the evidence on which a party relies is undisputed and susceptible to only one inference. *Hale*, 287 Kan. at 324; see *Cullip v. Domann*, 266 Kan. 550, 556, 972 P.2d 776 (1999).

In Kansas, the proximate cause of an injury is the cause which ""in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act."" *Yount v. Deibert*, 282 Kan. 619, 624-25, 147 P.3d 1065 (2006) (quoting *St. Clair v. Denny*, 245 Kan. 414, 420, 781 P.2d 1043 [1989]). An individual is "not responsible for all *possible* consequences of [a negligent act], but only those consequences that are *probable* according to ordinary and usual experience." *Hale*, 287 Kan. at 322 (citing *Aguirre v. Adams*, 15 Kan. App. 2d 470, 472, 809 P.2d 8 [1991]).

Legal causation requires foreseeability; that is, that the result of the defendant's conduct and contributing causes were foreseeable. *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 421, 228 P.3d 1048 (2010). Further, an intervening act may supersede a defendant's negligence and absolve the defendant of liability by breaking the connection between the initial negligent act and the resulting harm. See *Davey v. Hedden*, 260 Kan. 413, 427-28, 920 P.2d 420 (1996); *George v. Breising*, 206 Kan. 221, 227, 477 P.2d 983 (1970). Thus, an intervening cause actively operates to produce harm after the negligent defendant's act. See *Wrinkle v. Norman*, 297 Kan. 420, 429, 301 P.3d 312 (2013). "Forces of nature can be intervening causes." *Puckett*, 290 Kan. at 423.

Based on the uncontroverted facts, we conclude that there remains no genuine issue of material fact on the matter of causation. The negligence of Tri-Valley's bus driver was not the proximate cause of the totally unforeseeable consequence of Geier leaving some distant field unattended, unprotected, and exposed to damage from a storm that night. The negligence of the bus driver in colliding with G & C's truck and injuring its driver is far too remote from the consequence of Geier's corn stalks being ruined in a distant field many hours later to be called the "proximate" cause. Besides, any link, albeit remote, between the vehicular collision and the damaged corn stalks was interrupted by the intervening act of nature, the overnight storm, which caused the damage long after the bus driver's negligence ceased.

It would seem that the only way to bridge the gap would be for Geier to establish as an uncontested fact that the bus driver knew a storm was imminent and that a probable consequence of her negligence, based on the ordinary and usual experiences of mankind, would be the destruction of a distant field of corn stalks. But there is no such evidence. As an aside, though not one of his uncontroverted facts, Geier cites in his appellate brief his own deposition testimony in which he states: "This was the first time it rained all summer long." But he does not assert the storm could have been expected either by him or by the bus driver.

11

Geier's attempt to create an actionable causal link between the vehicular collision and the loss of his distant corn stalks in an intervening rain storm is a bridge too far. Tri-Valley was entitled to summary judgment on this issue, and the district court did not err in so concluding.

■ *Motion to Reconsider*

In granting Tri-Valley's summary judgment motion, the district court chose to disregard Geier's submission of additional documents and factual contentions. The district court reasoned, in part, that Geier failed to attach an affidavit certifying the documents' accuracy and completeness or providing foundation for their admissibility in evidence.

In his motion to reconsider, Geier claimed that the "omission of an affidavit to introduce . . . documents should [have been] considered excusable neglect under K.S.A. [2016 Supp.] 60-260." He argues that he supplied the missing affidavits in connection with his motion to reconsider and the court should have accepted these additional documents and contentions at that time.

But Geier failed to show excusable neglect in failing to provide supporting foundational affidavits for the documents to give them evidentiary value. Geier was fully aware that standing was a major issue in Tri-Valley's summary judgment motion. He did not argue that the additional documents were newly discovered evidence that, even with due diligence, could not have been submitted earlier with appropriate authentication. He did not explain how failing to supply supporting affidavits was excusable neglect.

A motion to reconsider is generally treated as a motion to alter or amend under K.S.A. 2016 Supp. 60-259(f). We review a district court's denial of a motion to alter or amend the judgment for any abuse of discretion. *Exploration Place, Inc. v. Midwest*

12

*Drywall Co.*, 277 Kan. 898, 900, 89 P.3d 536 (2004). Likewise, we review a district court's denial of a K.S.A. 2016 Supp. 60-260 motion for an abuse of discretion. *In re Marriage of Larson*, 257 Kan. 456, 463, 894 P.2d 809 (1995); *Morton County Hospital v. Howell*, 51 Kan. App. 2d 1103, 1108, 361 P.3d 515 (2015), *rev. denied* 304 Kan. 1017 (2016). As noted earlier, judicial action constitutes an abuse of discretion if the action is: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. The party asserting the district court abused its discretion bears the burden to show it. *Northern Natural Gas Co.*, 296 Kan. at 935.

Oddly, even in his appellate brief Geier's does not explain how his failure to originally include supporting affidavits constituted excusable neglect. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

"[E]xcusable neglect 'implies something more than the unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind.'" *State v. Davisson*, 303 Kan. 1062, 1069, 370 P.3d 423 (2016) (quoting *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 65, 523 P.2d 351 [1974]). "What constitutes excusable neglect under the statute must be determined on a case by case basis under the facts presented." *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1012 (1978). Though the issue here is fact-intensive, Geier provides no facts to show excusable neglect within the confines of the facts of this case. Geier, seeking to rely on excusable neglect, must come forward with facts that excuse his neglect. See *Tyler v. Cowen Construction, Inc.*, 216 Kan. 401, 407, 532 P.2d 1276 (1975). He has failed to do so here, so this claim necessarily fails. The district court did not err in denying his motion to reconsider.

Affirmed.

13