No. 47,893

EDWARD T. STEWART, *Appellee,* v. LARRY CUNNINGHAM and JOLEEN
CUNNINGHAM, *Appellants.*

(548 P. 2d 740)

Opinion filed
April 10, 1976.

*Jack E. Dalton,* of Mangan, Dalton, Trenkle & Gunderson, of Dodge City,
argued the cause and was on the brief for the appellants.

*Harry A. Waite,* of Dodge City, argued the cause and was on the brief for
the appellee.

The opinion of the court was delivered by

FROMME, J.: This is an action to foreclose a contractor's lien for
labor and materials filed pursuant to K. S. A. 60-1102, against the
owners of real property. The owners, Larry and Joleen Cunningham,
contracted to construct a motel in Dodge City, Kansas. The con-

tractor, Edward T. Stewart, contracted to do the plumbing, heating and air conditioning work on this motel. The owners were dissatisfied with the work and on completion of the project refused to make final payment on the contract, which payment was to include "extras" furnished by the contractor under written change orders. The contractor filed suit. The owners counterclaimed for alleged damages arising from loss of revenues caused by delay in completing the work on the motel and for further damages because of inferior work and future expenses necessary to correct defects in the work.

After a trial to the court a judgment was entered determining the amount remaining due under the contract ($5,087.93) and ordering foreclosure of the contractor's lien. The owners were denied relief under their counterclaim. The owners appeal. The points raised on appeal depend largely upon the facts developed by the evidence. A recital of the facts surrounding this controversy will be helpful.

In 1971, the owners became interested in constructing a motel and discussed their plans with a contractor in York, Nebraska, by the name of Cleveland. Cleveland had constructed a number of motels and he provided the Cunninghams with basic blueprints for the proposed motel. As the discussions between Cleveland and the Cunninghams progressed the two met with Stewart to determine the requirements for plumbing, heating and air conditioning necessary to complete the Cleveland plans. Stewart reviewed the plans and designed the necessary plumbing, heating and air conditioning with the guidance of Cleveland. The cost was estimated and a bid was submitted of $32,590.00 by Stewart.

The Cunninghams wanted Cleveland to act as general contractor for the construction project. He was unable to do so because of his work schedule. The Cunninghams then employed a local firm, Mid-Way Construction Company, to fill the shoes of Cleveland. Stewart first submitted the $32,590.000 bid on the project to the Cunninghams in writing and Larry Cunningham accepted the bid by approving the same and affixing his signature.

Thereafter the Cunninghams entered into a contract with Mid-Way as a general contractor and advised Stewart his plumbing contract should be submitted to Mid-Way and attached to Mid-Way's construction contract. Payments on all contracts were to be made through Mid-Way as required by the agency financing the construction of the motel. Stewart complied.

Construction on the motel began in April, 1972, and periodic payments were made by the Cunninghams to Mid-Way. Mid-Way in turn forwarded payments to Stewart for his work. On August 11, 1972, Mid-Way submitted its final request for payment. Payment was made to Mid-Way for the balance due them but the sum of $3,500.00 was withheld by the Cunninghams on Stewart's contract because some of his work remained undone. During the period of construction fourteen "change orders" in writing were made in connection with the plumbing contract. Most of these "change orders" were approved as shown by the signatures of either Larry Cunningham or of his father, Earl Cunningham. The $3,500.00 balance on the contract and the amounts due under the change orders, less certain corrections, represent the amount found due. Other evidentiary facts will be developed later as we discuss the points on appeal.

The first point raised by the owners attacks the validity of Stewart's lien on the motel premises. Our decision on this point depends upon whether Stewart was a contractor or a subcontractor. Although no copy of the lien as filed by Stewart appears in the record on appeal it is conceded the lien was properly filed and recorded in the form required by K. S. A. 60-1102 which covers liens of contractors.

It is further conceded that it was not served upon the owner as required by K. S. A. 1975 Supp. 60-1103 to perfect the lien of a subcontractor.

This subcontractor statute in pertinent part provides:

". . . The claimant shall either cause a copy of the lien statement to be served personally upon the owner and any party obligated to pay the same in the manner provided for the service of summons within the state by K. S. A. 1965 Supp. 60-304 . . . or shall mail a copy of the lien statement to the owner of the property and to any party obligated to pay the same by restricted registered or certified mail, . . ."

At the trial the parties stipulated that the court, in advance of trial, should determine whether Stewart was a contractor and that this factual issue should be determined upon the pleadings and the depositions of both Cunningham and Stewart, which had been taken earlier. The court made the following ruling:

"That the evidence abundantly supports plaintiff's position that his contract was with Larry Cunningham and was not a sub-contract with Mid-Way Construction Co., Inc."

The evidence on the issue of whether Stewart was an original contractor or a subcontractor within the meaning of the mechanic's

lien statute is conflicting. The evidence before the trial court shows that Stewart and the owners discussed a contract directly. Stewart made his offer, which was accepted by Larry Cunningham, before any contract was entered between the owners and the general contractor. Although the Stewart contract was eventually included in the Mid-Way contract and Stewart's progress payments were disbursed through Mid-Way, the owners dealt directly with Stewart during the construction of the motel to request changes and to solve plumbing, heating and air conditioning problems which arose.

A contractor is one who furnishes labor or materials under a contract direct with the owner for the improvement of property. (57 C. J. S., Mechanics' Liens, § 90, p. 602.)

A subcontractor is one who assumes a portion of a contract from the original contractor or another subcontractor for the performance of all or part of the services or work which the other has obligated himself to perform under contract with the owner. (57 C. J. S., Mechanics' Liens, § 98, p. 608.)

K. S. A. 1975 Supp. 60-1101 provides:

". . . When two or more such contracts are entered into applicable to the same improvement, the liens of all claimants shall be similarly preferred to the date of the earliest lien of any of them."

There can be little doubt that the above statute contemplates that more than one contractor may be employed by one property owner to perform labor or furnish material for the same construction project.

In *Toler v. Satterthwaite*, 200 Kan. 103, 106, 434 P. 2d 814, it is pointed out that the lien of a subcontractor is created by the statute when said subcontractor has no contract with the owner and is not a direct creditor of the owner of the property. In *Toler* we say:

". . . The purpose of requiring service of the notice of the lien is to advise the owner of the property of the existence of the lien, afford him an opportunity to investigate the claim, determine its validity, and avoid paying twice for the same account. . . ." (p. 107.)

A problem similar to our present one was encountered in *Fidelity & Deposit Company of Maryland v. Felker*, 469 S. W. 2d 389 (Tex. 1971). There the owner of property sought to develop a shopping center. The owner originally contemplated that one contractor would be responsible for the entire project. Bids were received from several contractors, but all were rejected as too high. After

revision of the plans the owner accepted a bid from Felker for electrical work. Subsequently Felker's contract was included in a general contract held by a second contractor for the entire project and a surety bond covering the entire cost of the project was written to insure payment. Construction on the shopping center was halted just prior to completion. Felker then filed suit as a subcontractor to recover under the surety bond. Felker argued that since his contract had been included in the general contract he became a subcontractor. The Texas Supreme Court found Felker to be an original contractor by virtue of his separate contract with the owner, despite his inclusion in the general contract and therefore he was barred from recovery under the payment bond which existed for the protection of subcontractors. Although the case involved an ultimate legal question which differs from that presented in the instant case, the issues and circumstances are similar.

We hold that if an owner of property negotiates and signs a contract directly with a contractor to furnish plumbing, heating and air conditioning for construction of a motel such contract should be considered that of a contractor under the mechanic lien statute, K. S. A. 60-1102, and the fact that payments are channeled through another general contractor does not change the nature of that relationship. Accordingly no notice to the owner was required to perfect the lien and the trial court was correct in this regard.

The appellants-owners next argue that the trial court erred in excluding evidence on and denying their claim for loss of profits caused by Stewart's delay in completing the contract. They sought to introduce evidence of daily net profit from the motel after it was opened for business in order to establish the amount of loss for eighteen days' delay in completion.

The findings of the court in this regard appear to have adequate support in the evidence. The court found:

"11. On April 26, 1972, City Inspector Dave Hicks was making a general routine inspection of the job and noticed that the proposed gas line pipe did not have conventional wrapping. He called this fact to the attention of plaintiff's employee. Hicks stated that in his opinion such pipe did not confirm [conform] to the Dodge City Building Code.

"12. Ed Stewart contested Dave Hick's conclusion that the pipe failed to meet code requirements. Stewart notified Cunningham of the disagreement with Dave Hicks and told Cunningham that he, Stewart, wanted to try to convince Hicks the proposed pipe with a new 3-M Company resin coating met Dodge City code requirements. Cunningham told Stewart that he thought

Stewart was right about the pipe and that he could take time to attempt to persuade Dave Hicks the pipe met Dodge City code requirements, but not to hold up the job. The contract has stated no completion date and there appears to be no deadline set between Stewart and Cunningham as to the time that Stewart would have to try to persuade Dave Hicks.

"13. The evidence was that the period of dispute with the City officials as to the pipe requirements held up the decorators, but the court can't see that their work could have been greatly impaired. The only material impairment that could have been caused would be the surfacing of the yard area.

"14. Stewart was unsuccessful in his effort to convince Dave Hicks the proposed resin coated pipe met Dodge City code requirements, and installed the wrapped type. On June 26, 1972, Dave Hicks approved the gas line pipe as installed.

. . . . . . . . . . . . .

"31. Cunningham's testimony as to loss of profit may have been of some value in determining damages for unnecessary delay in completion if the delay was established by a greater weight of the evidence and the fault for the delay, if any, on the part of Stewart. There was no established completion date and no specific period of delay that was not approved of by Cunningham in the negotiation between Stewart and Cunningham."

It is generally held that where a delay by the contractor in the performance of a contract is induced by an expression of waiver or assent on the part of the contractee, the contractee is estopped from asserting the delay as a reason for refusing to render a return performance or as a basis for claiming damages or a forfeiture. (3A Corbin on Contracts, [1960] § 754, pp. 489, 490.)

It has been held that an owner of property is precluded from obtaining damages for the delay of construction of improvements thereon where he has contributed to the delay, even though the contractor has caused some or most of the delay. (See *Kaltoft v. Nielsen,* 252 Iowa 249, 106 N. W. 2d 597, and *Haggerty v. Selsco,* _____ Mont. _____, 534 P. 2d 874.)

In the present case there was no fixed date for completion expressed in the contract. When time of performance is not fixed in an executory contract the usual rules of construction should be employed to ascertain the intention of the parties, and if the nature of the subject matter and the surrounding circumstances so indicate a reasonable time for performance shall apply. (*Rymph v. Derby Oil Co.,* 211 Kan. 414, 507 P. 2d 308.)

In the present case with no date for completion expressly stated in the contract a delay of one month more or less can hardly be held unreasonable.

In addition the evidence supports the trial court's findings that Cunningham was consulted concerning the unwrapped pipe and

assented to the course of action by Stewart in attempting to obtain the approval for installation of the resin coated pipe which was already on the job. In such case we hold that the owner, Cunningham, is precluded from recovering damages for the delay by reason of estoppel. When a delay in the performance of a contract is induced by an expression of assent by the owner to the course of action of the contractor which contributes to a delay of less than one month the owner is estopped from asserting the delay as a basis for claiming damages therefor.

Accordingly it was not error for the trial court to refuse to admit evidence of loss of profits caused by the delay and to refuse judgment for such loss of profits.

The appellants-owners next contend that the trial court erred in refusing to grant their post trial motions to amend their petition to include a claim for the costs of remedial work alleged to be necessary to correct defects in workmanship and bring the work up to specifications. They presented this point as a basis for granting a new trial.

These same issues were presented to the court at the trial under allegations of defective workmanship and a prayer for damages. Upon the evidence presented the court found:

"9. The carpentry contractor did not erect batter boards for the excavation. As a result Stewart experienced difficulty in determining the precise location of the toilet plumbing in the ground. When the toilets were later set, some of them extended away from the wall more than others. Plaintiff attempted to adjust this with certain toilet models to suit the distance it had to set from the wall. The defect was the joint fault of the builder and the plumber. No testimony was offered to show the monetary damages, if any.

"10. At the time work commenced on the motel, plaintiff located the city water main in the northeast corner of the motel site and made four one-inch taps. These taps entered a two-inch copper line running west between 18 and 30 feet where the line becomes three-inch copper line and continues west to a two-inch water meter. The plans called for three-inch line and water service is inadequate for the installations and yard as a result thereof. Again, there is no evidence of monetary damages for the court to base judgment on.

. . . . . . . . . . . . . .

"30. There is no evidence that defendants have expended any money for remedial steps to cure the alleged defects in the work performed by plaintiff. There is no evidence of a difference in value between the value of the motel as planned and the value of the motel as actually constructed."

It is incumbent on one who claims damages on account of a breach of contract to show not only the injury sustained, but also the amount of damage suffered as a result of the breach with reason-

able certainty. In order for the evidence to be sufficient to warrant recovery of damages there must be some reasonable basis for computation which will enable the trier of fact to arrive at an approximate estimate thereof. (*Venable v. Import Volkswagen, Inc.*, 214 Kan. 43, 50, 519 P. 2d 667.)

In this case the evidence of appellants was insufficient to allow the court to determine the monetary amount of appellants' injury. No evidence was offered to show either the difference between the value of work promised by Stewart and the value of that actually performed or the cost of correcting the defects. In addition appellants did not show what portion of the substandard work was attributable to Stewart and what defects were caused by Mid-Way as general contractor.

A new trial should not be granted merely because a party has failed to establish grounds for recovery during a trial and feels he might prevail if given a new trial.

Finally appellants complain that the lower court erred by assessing all costs in the action to them. Appellants complain that although judgment was rendered in favor of appellee part of the recovery sought by him was denied. Therefore appellants reason a portion of the costs should have been taxed to appellee.

K. S. A. 60-2002 grants the trial court discretion in assessing the costs of an action. The taxing of costs in an action will be reviewed only for abuse of discretion by the trial judge. (*Commercial Asphalt, Inc. v. Smith*, 200 Kan. 362, 436 P. 2d 849.) No abuse of discretion appears in this case.

The judgment is affirmed.