(88 P.3d 1246)
No. 90,398

SOUTHWEST AND ASSOCIATES, INC., *Appellee*, v. STEVEN ENTERPRISES, LLC, *Appellant*.

Opinion filed May 7, 2004.

*Robert W. Kaplan*, of Kaplan, McMillan, and Harris, of Wichita, for appellant.

*Russell W. Davisson*, of Wichita, and *Michael D. Gragert*, of Gragert, Hiebert and Gray, of Wichita, for appellee.

Before MALONE, P.J., GREENE, J., and DAVID L. STUTZMAN, District Judge, assigned.

GREENE, J.: Steven Enterprises, LLC (Steven) appeals the judgment of the district court in favor of Southwest and Associates, Inc. (Southwest) based upon a contract indebtedness, claiming error in determining a contract existed between these parties and arguing that the only enforceable contract for the aluminum siding work on Steven's building was between Southwest and Steven's general contractor, Lien Enterprises, Inc. (LEI), now bankrupt. We affirm.

*Factual and Procedural Background*

Steven sought to remodel certain facilities in Wichita for an upscale used car dealership. Southwest was first contacted by Steven's design consultant, Tony Blake, who requested that Southwest bid aluminum siding for the building. After at least two meetings between Southwest and Blake, Southwest submitted its initial bid to Blake for the work. Blake responded by phone, suggesting that the bid was high and that Southwest would have to deal directly with Brandon Steven of Steven.

After Southwest was unsuccessful in reaching Steven, it revised its bid, removing certain aspects of the work and lowering the overall price. The revised bid was communicated to Steven in a letter addressed to both Brandon Steven and Blake. Shortly after its receipt, Brandon Steven called Southwest to conclude the deal by phone. The conversation as related by a Southwest vice-president, Clinton Hageman, was as follows:

"A. [Brandon Steven] said, 'I'm sitting here'—or 'I'm here by Gary [Lien]' like on speakerphone. I said hello to him. And he said, 'I want to get this aluminum job'—Brandon said, 'I want to get this aluminum job done. I want'—okay. He said, 'Gary [Lien], he's going to pay you,' and I said, 'Okay, as long as—it doesn't matter, as long as I get paid.' I asked for his billing address, and he gave that to me, and that was the end of the conversation."

As related by Brandon Steven, the conversation was as follows:

"A. I told him the deal that I got faxed, the quote, $13,766, was okay, that Gary [Lien], who is my contractor, he's paying it; I'm paying him; bill him for that."

The only writings in existence among the parties are the initial bid and the revised bid; there is no completed written agreement. The only involvement of LEI was the presence of Gary Lien in the phone conference reflected above; the Southwest vice-president testified that there were no further conversations with LEI and no oversight or supervision by LEI, but that all further conversations regarding details of the work were directly with Brandon Steven. The work was completed, and Southwest billed LEI as directed. LEI filed for bankruptcy protection before Southwest was paid.

Southwest not only filed this suit against Steven alleging the existence of a binding contract and unjust enrichment, Southwest also filed a mechanic's lien against the real property and a claim in the LEI bankruptcy. After a bench trial in the contract action, the district court found and concluded that "Mr. Steven was acting directly to negotiate the contract with Southwest and Associates and, therefore, is liable."

Steven appeals.

*Standard of Review*

Whether a binding contract was entered into depends on the intention of the parties and is a question of fact. *Reimer v. The Waldinger Corp.*, 265 Kan. 212, 214, 959 P.2d 914 (1998). Where the district court has made findings of fact and conclusions of law, we must determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the conclusions of law. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 747, 27 P.3d 1 (2001). Substantial competent evidence is such legal and relevant evidence as to provide a substantial basis of fact from which the issues can reasonably be resolved. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). Appellate review of legal conclusions is unlimited. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689-90, 984 P.2d 719 (1999).

*Is the District Court's Finding of a Contract Between Southwest and Steven Supported by Substantial Competent Evidence?*

In order to find that Southwest and Steven Enterprises entered into an enforceable contract, Southwest is required to show a meeting of the minds as to all essential terms. *Sidwell Oil & Gas Co. v. Loyd*, 230 Kan. 77, 79, 630 P.2d 1107 (1981). In determining intent to form a contract, the test is objective, rather than subjective, meaning that the relevant inquiry is the "manifestation of a party's intention, rather than the actual or real intention." 17A Am. Jur. 2d, Contracts § 27. Put another way, "the inquiry will focus not on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract." 1 Lord, Williston on Contracts § 4:1, p. 241 (1990).

We recognize that Steven had a general contract for the remodeling project with LEI and that this general contract apparently included a projected cost for aluminum siding. We also acknowledge that Brandon Steven's version of the facts included an introduction of Gary Lien of LEI as his "contractor." Finally, we realize that the Southwest billing was expressly directed to LEI. Steven may have believed that Southwest was a subcontractor of LEI and that the work was a part of Steven's general contract with LEI, but it appears that the district court properly focused not upon Steven's unstated perceptions or beliefs but rather upon the "outward expressions" of contractual assent.

Southwest was contacted by Steven's design consultant Blake, not by LEI. The job description and further negotiations with Southwest were conducted with Steven absent any involvement by LEI. The phone conference to finalize the agreement was conducted by Brandon Steven, who undoubtedly introduced Gary Lien of LEI, but merely specified that billing and payment would be routed through LEI, a fact not inconsistent with an independent contract between Southwest and Steven. *See Stewart v. Cunningham*, 219 Kan. 374, 378, 548 P.2d 740 (1976). The progress of Southwest's work was discussed directly with Brandon Steven, and LEI apparently never became involved as one would expect if LEI

had been the general contractor and Southwest had been the subcontractor. In contrast, there is no evidence whatsoever that LEI manifested to Southwest an assent to be contractually obligated for payment. To the extent there is any written evidence among the parties, it is between Southwest and either Steven or Steven's design consultant; there is no written evidence of a contractual relationship between Southwest and LEI.

Steven argues that Southwest's claim in bankruptcy avers a contract for "goods and services" with LEI, and that this is entirely inconsistent with any direct contract with Steven. Even if inconsistent, this fact is but one of many to be considered and weighed by the factfinder. It is not our function to reweigh the evidence; we are restricted by our standard of review even if we might have weighed the evidence differently than did the district court. *Reimer v. The Waldinger Corp.*, 265 Kan. at 214.

Substantial competent evidence supports the district court's finding that the only enforceable contract was between Southwest and Steven.

*Is the District Court's Conclusion that There was an Independent Contract Between Southwest and Steven Contrary to Law?*

Steven argues that the district court's finding of a separate and independent contract directly with a mere subcontractor (Southwest) and beyond or "outside" its general contract with LEI, is contrary to law. Steven acknowledges that Kansas law contemplates that there can be more than one contractor employed by a property owner to perform labor or furnish material on a construction project, citing *Stewart v. Cunningham*, 219 Kan. at 377 (see K.S.A. 60-1101), but Steven contends that *Stewart* requires a *written* contract between the erstwhile subcontractor and the owner in order to establish any independent contractual obligation outside a general contract.

The facts in *Stewart* are similar to those before us, and the issue was whether the enforceable contractual relationship with a plumbing, heating and air conditioning (HVAC) contractor on a hotel project was exclusively with the general contractor or directly with the owner. The initial bid had been submitted to and accepted

by the owner prior to any general contract. The HVAC contractor was later advised of the existence of a general contract and payments were made to that contractor by the general contractor. The court noted, however, that change orders were negotiated between the HVAC contractor and the owner. 219 Kan. at 376. In holding the owner liable, our Supreme Court stated:

"We hold that if an owner of property negotiates and signs a contract directly with a contractor to furnish plumbing, heating and air conditioning for construction of a motel such contract should be considered that of a contractor under the mechanic lien statute, K.S.A. 60-1102, and the fact that payments are channeled through another general contractor does not change the nature of that relationship. Accordingly no notice to the owner was required to perfect the lien and the trial court was correct in this regard." 219 Kan. at 378.

Although a written contract with the owner was inherent in the *Stewart* facts, we disagree with Steven's reading of the decision as explicitly *requiring* a written contract in order to contractually obligate an owner. Here there was no written contract involving Southwest, either with Steven or with LEI. Where no writing manifests a contract between a supplier to a construction project and either the owner or a general contractor, we decline to impose a presumption that all contracts related to the construction project obligate only the general contractor. The better rule is to apply classic principles of contract law in order to determine whether any enforceable contract exists and between which of the parties. This appears to have been the approach of the district court, and we conclude that there was no error of law.

Affirmed.