NOT DESIGNATED FOR PUBLICATION

No. 127,092

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TERRY CLARK,
*Appellant*,

v.

RHF 1, LLC, and REVIVAL HOME FURNISHINGS, LLC,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; PAUL C. GURNEY and K. CHRISTOPHER JAYARAM, judges. Submitted without oral argument. Opinion filed May 30, 2025. Affirmed.

*Terry J. Clark*, appellant pro se.

*Robert G. Harken*, of Harken Law Firm, LLC, of Overland Park, for appellees.

Before CLINE, P.J., ARNOLD-BURGER and GARDNER, JJ.

PER CURIAM: Terry Clark appeals the district court's breach of contract judgment in favor of RHF 1, LLC—a company owned by Debra Ann Taylor associated with her furniture consignment business, Revival Home Furnishings, LLC—that arose out of a dispute involving the construction of a building. Because Clark believed he was not compensated for his services in supervising the construction, Clark filed the initial petition alleging breach of oral contract, quantum meruit, and constructive trust claims against RHF 1, and a claim to pierce the corporate veil and find Taylor and Revival jointly and severally liable as alter egos of RHF 1 and each other. RHF 1 counterclaimed for breach of contract, negligent misrepresentation, and unjust enrichment.

1

Following a bench trial, the district court granted a motion for judgment as a matter of law in favor of Taylor and Revival on Clark's claim for piercing the corporate veil. The court further ruled in RHF 1's favor on both Clark's contract claim and RHF 1's breach of contract counterclaim, determining that RHF 1 was entitled to damages resulting from Clark's nonperformance that included costs to remedy construction deficiencies and lost revenue. The court further awarded attorney fees to RHF 1 as the prevailing party. After reviewing the many issues presented and the available record, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 2014, Taylor owned and operated Revival, which sold new and consigned furniture from a leased location in Overland Park, Kansas. In 2014, Taylor learned the building leased to Revival had been sold and Revival's lease would not be renewed once it expired in December 2016.

Clark, who had initially contacted Taylor sometime prior to 2012 regarding another business opportunity, offered to help Taylor look for a new location for Revival and helped create RHF 1 for the purpose of constructing a new building from which Revival could operate. Clark also helped Taylor look for vacant lots and negotiate a purchase agreement in December 2014. Taylor applied for and in April 2015 secured a construction loan on RHF 1's behalf with Central Bank of the Midwest for around $1.3 million. Taylor used a bid from Meyer Contracting (also known as Meyer Construction)—whom Clark had identified for Taylor as a general contractor for the project—as the basis for establishing her budget and the ultimate loan amount.

After securing the loan, Clark informed Taylor that Meyer Contracting could no longer serve as the general contractor. Clark instead offered his services, based on his years of experience in the construction industry, for the construction of the new building.

2

Clark represented to Taylor that he could construct the building for RHF 1 under the allotted budget and that RHF 1 would be able to use the first floor of the building for Revival by December 1, 2016. The second floor would contain apartments, which RHF 1 could offer for rent to help cover the loan payments. In exchange for the building's timely completion, RHF 1 agreed to compensate Clark by paying him any remaining amount from the construction loan, after all invoices from contractors and subcontractors were paid.

Because Clark was not a licensed general contractor, Taylor hired Richard Andrews to obtain the building permit from the City of Overland Park. In exchange, Andrews received $2,000 for pulling the permit.

Clark retained architect Alan Atha to help design the building, secure the design approval from the Overland Park Planning Commission, and generate the final construction plans. Rather than using those plans to obtain bids from subcontractors or develop a budget, Clark instead chose to obtain subcontractors as the construction progressed. At times, Clark also made design changes without seeking approval from Atha or Taylor. Atha believed Clark was the general contractor or was a partial owner of RHF 1 based on their relationship.

The process for receiving funds under the construction loan involved Clark preparing draw requests and attaching invoices, which were submitted to Atha and Taylor for approval, then submitted to Central Bank. Central Bank would then authorize the funding by issuing a payment check or authorizing reimbursement for construction costs advanced by Taylor or Revival. As construction progressed, Clark often provided draw requests with limited or no time to sufficiently review the documents because payments were past due. At times, Clark threatened to shut down construction if payments were not provided, so Taylor used funds from Revival that were later reimbursed from the loan funds. Central Bank also questioned some of the draw requests because they appeared to

3

show Clark seeking reimbursement for personal expenses instead of construction costs related to the project.

In early January 2017, Clark suffered a heart attack and was no longer able to work on the construction project. At this time, the building was not complete and contained numerous construction deficiencies and code violations. As a result, RHF 1 had to hire more contractors to complete the building, which further resulted in RHF 1 having to modify its loan to over $1.5 million to cover the additional costs.

In August 2019, Clark sued RHF 1, Taylor, and Revival, raising breach of contract, quantum meruit, constructive trust, and alter ego claims and seeking compensation for his services related to the construction project. In response, RHF 1 asserted counterclaims against Clark for breach of contract, negligent misrepresentation, and unjust enrichment.

The district court held a bench trial over four days in the fall of 2021, at which the parties each presented testimony and numerous exhibits. On the third day of trial, defendants moved for a directed verdict on all claims asserted by Clark based on the evidence he had presented. The district court granted the motion only as to Clark's piercing the corporate veil claim against Taylor and Revival, explaining that Clark failed to show improper commingling of funds.

At the conclusion of trial, the parties and district court agreed the parties would submit proposed findings of fact and conclusions of law after the transcripts of the trial were made available to the parties. Once the district court received the parties' written submissions, it entered a journal entry on January 5, 2023, first ruling for RHF 1 on all of Clark's claims. Then, the court memorialized its trial ruling for judgment as a matter of law on Clark's piercing the corporate veil claim against Revival and Taylor.

As for RHF 1's counterclaims, the district court determined that RHF 1 was entitled to damages on its breach of contract claim in the amount of $190,816 based on Clark's failure to perform the terms of the parties' oral contract. The court further concluded that RHF 1 failed to prove its counterclaims for negligent misrepresentation and unjust enrichment. The court concluded its journal entry by noting that RHF 1 was the prevailing party, thus entitling it to costs and attorney fees under K.S.A. 16-1806. Thus, the court directed RHF 1 to file a motion for entry of attorney fees within 30 days of the entry of judgment and Clark would have 14 days to respond. The court closed by stating it "shall retain jurisdiction over this case to enter a final judgment inclusive of an attorney's fees award."

RHF 1 timely moved for attorney fees, which Clark opposed. After a hearing on the motion, the district court granted RHF 1's request and entered a final journal entry of judgment in July 2023 ordering Clark to pay $102,070.99 in attorney fees.

Clark, now representing himself, then filed several posttrial motions which will be detailed later. Most relevant to this appeal, in August 2023, Clark moved for a new trial or for reconsideration of the judgment. Along with the motion, Clark filed a lengthy brief detailing his objections to nearly all of the district court's factual findings, but also referencing new evidence in the form of sworn statements by forensic document examiners, which he would use to show witnesses had provided false testimony and conspired against him to commit fraud.

The district court considered Clark's posttrial motions at a hearing in October 2023, for which the court provided a remote hearing option via Zoom to accommodate a request by Clark filed before the hearing. Clark did not appear in person or on the Zoom call, so the court accordingly denied all his posttrial motions. Clark subsequently moved to set aside the journal entry from that hearing, contending he did not receive proper

5

notice. He also argued the court ignored the new evidence included with his motion for reconsideration and relevant caselaw in entering judgment for RHF 1.

The district court promptly denied Clark's motion to set aside the journal entry, construing it as a request filed under K.S.A. 60-260. The court concluded that Clark failed to appear and otherwise showed no legitimate basis for setting aside the court's ruling.

Clark timely appealed.

REVIEW OF CLARK'S APPELLATE CHALLENGES

Clark's pro se appellate brief raises 17 total claims of error, many of which are duplicative or address similar aspects of the proceedings below. But four common themes nonetheless emerge: (1) The district court erred by finding Clark breached the oral agreement with RHF 1 because he was not the general contractor hired for the construction project; (2) the district court erred by refusing to grant a continuance to allow a notary to testify; (3) the district court violated Clark's due process rights, the Americans with Disabilities Act, and Supreme Court Rule 170 (2025 Kan. S. Ct. R. at 230) by refusing to hold a Zoom hearing on his posttrial motions; and (4) the district court abused its discretion in denying an untimely motion to reconsider. We find his arguments unpersuasive.

I. *Did the district court err in entering judgment on the breach of contract claims?*

Clark's primary argument—which encompasses seven total issues asserted in his brief—is essentially that the district court erred in determining he breached the terms of an oral contract with RHF 1.

6

To begin, the only standard of review mentioned in Clark's brief concerns the statutory interpretation of a written contract, which he correctly notes is unlimited. But the question before this court does not involve the terms of any written agreement because the judgment subject to appeal here stemmed from an oral contract between Clark and RHF 1. Moreover, as RHF 1 correctly notes in its brief, this court's review is not entirely unlimited as Clark suggests because the district court entered factual findings and legal conclusions on the merits following a bench trial.

Appellate courts typically review a district court's factual findings and legal conclusions following a bench trial under a bifurcated standard of review. Factual findings are reviewed for substantial competent evidence, while legal findings are reviewed under an unlimited standard of review. *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014); *Thoroughbred Assoc. v. Kansas City Royalty Co.*, 58 Kan. App. 2d 306, 316, 469 P.3d 666 (2020). "'Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion.'" *Pyle v. Gall*, 317 Kan. 499, 501, 531 P.3d 1189 (2023). When conducting such review, this court does not reweigh conflicting evidence, evaluate witnesses' credibility, or determine factual questions. *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 325, 255 P.3d 1186 (2011). Instead, we will review the facts of the case in the light most favorable to RHF 1 as the prevailing party below to ascertain whether the district court's judgment is properly supported by substantial competent evidence. See *In re Adoption of J.M.D.*, 293 Kan. 153, 171, 260 P.3d 1196 (2011).

As a result, Clark abandons any challenge to the district court's factual findings because he makes no attempt to argue the substantial competent evidence standard throughout his brief. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). For that reason, this court could conclude that Clark's numerous challenges to the district court's factual findings are inadequately briefed.

Similarly, some of his arguments seek to raise constitutional violations, which are generally not considered to be properly before an appellate court unless first raised below. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014). While there are several exceptions to that general rule, the Kansas Supreme Court has cautioned that litigants who fail to explain why an issue not raised below is properly before the appellate court risk a ruling that the issue is improperly briefed. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008) (listing exceptions); see also *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019); Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36). Clark makes no attempt to comply with this rule and no exceptions are readily apparent, so this court could also decline to review the merits of any constitutional arguments offered in support of reversing the district court's breach of oral contract judgment.

Despite these procedural deficiencies, we will review Clark's arguments because, even after considering the merits, we find his arguments unavailing.

 A. *Substantial competent evidence shows Clark agreed to supervise the construction of RHF 1's building and ensure its timely completion.*

Several of the issues Clark raises in his brief concern his belief that the district court incorrectly found that RHF 1 hired him to be a general contractor. For instance, in his first and sixth issues, Clark asserts that the district court erred by naming him the general contractor instead of Andrews, which he contends is a usurpation of the constitutional "Home Rule" authority granted to Johnson County and the City of Overland Park over licensing requirements. In his eleventh issue, Clark asserts the court erred in determining that Taylor hired Andrews solely to obtain the building permit. Finally, in his twelfth issue, Clark asserts the court erred in placing all responsibility on him for the construction changes that occurred during the project. These issues can be addressed together because they are all built on the same underlying premise: that the

district court erred in determining that RHF 1 hired Clark—and not Andrews—as the general contractor who would oversee construction of the building.

To begin, the district court's judgment in favor of RHF 1 was two-fold because Clark and RHF 1 had asserted breach of contract claims against each other below. Whether the parties have entered into a binding agreement depends on the intent of the parties and is a question of fact. *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012); *Duling v. Mid American Credit Union*, 63 Kan. App. 2d 428, 435, 530 P.3d 737 (2022). Similarly, the parties must have a "meeting of the minds" on the material or essential terms of the agreement. *U.S.D. No. 446*, 295 Kan. at 282.

In resolving the parties' competing claims, the district court acknowledged that each side needed to present evidence to support their version of the contract that allegedly existed. In other words, there seems to be no dispute that Clark agreed to provide services in some capacity related to the construction of RHF 1's new building—the parties simply disagree about the compensation terms of the agreement. As to Clark's claim, the court concluded that he failed to demonstrate by a preponderance of the evidence that RHF 1 agreed to pay him a fixed amount of $125,000 for his services, and his testimony on this point lacked credibility. The court found based on the evidence presented that RHF 1 agreed to pay Clark "any amount remaining from RHF [1]'s $1,314,515 construction loan, once the building was completed and all draws, costs and subcontractors were paid." The court also found that Clark had promised "he could complete construction of the building for $1.2 million" and that "the building would be completed by December 1, 2016, to allow the retail store to be open for business." In short, the court concluded an agreement between the parties existed whereby Clark would ensure the building's completion under an allotted budget by a specific date so that RHF 1 could then pay Clark with the remaining loan proceeds.

Importantly, at no point in Clark's appellate brief does he contend there was not substantial competent evidence to support the district court's factual finding that a contract existed, particularly one with the terms asserted by RHF 1 in support of its counterclaim. Clark's inadequate analysis brings up another problem, which is that he only contends the court erred by granting RHF 1's counterclaim. That is, he does not seem to be arguing that the court erred by rejecting his own breach of contract claim. For that reason, we need only determine whether substantial competent evidence supports RHF 1's version of the agreement as found by the district court in granting its counter claim.

As RHF 1 points out, the district court's factual determination that its version of the contract existed did not include a finding that Clark specifically agreed to be the general contractor. Although Clark points to evidence suggesting that several witnesses knew he was not a licensed general contractor or that Andrews pulled the building permit, those are not the salient questions. Instead, the question concerns whether there was substantial competent evidence to support the court's findings that in April 2015 Clark specifically "agreed to provide services" which "would include supervision of the construction of the building, securing suppliers and subcontractors, coordinating subcontractors' work, submitting invoices for payment, and acting as the owner's agent." The court further found this agreement arose after Clark informed Taylor that Meyer Contracting—the original general contractor listed on the loan approval documentation— would no longer be the general contractor on the project.

These factual findings are supported by testimony from numerous witnesses, including Clark who stated that his role would be "to basically supervise the job, be the owner's agent and watch everybody and everything." Taylor testified that after Meyer Contracting "disappeared," Clark proposed he could finish the construction but needed a general contractor to obtain the building permit. Furthermore, the bank representative testified he believed Clark was now serving as the general contractor because Clark was

the person submitting draw requests after construction began. Clark's attempt to distinguish his supervisory role from that of a licensed general contractor based on other available evidence like the signed agreement between Taylor and Andrews—which the court also found was forged by Clark, as addressed later—is unavailing because the evidence nonetheless shows he agreed to provide his services to ensure the building's completion. Put simply, we find there is evidence in the record viewed in the light most favorable to RHF 1 to support the district court's finding that the parties reached a binding agreement that Clark would provide supervisory services related to the construction project.

B. *Substantial competence evidence shows Clark did not complete the construction on time and then abandoned the project.*

We will next address whether Clark breached the terms of his agreement with RHF 1 by failing to complete the construction on time and then abandoning the project. On this point, the district court determined Clark had promised to complete the building by December 1, 2016. Clark's discussion on this point is minimal. He simply quotes his testimony that he had a heart attack and surgery in January 2017, was gone by April, and did not "'know anything about this'" and then includes a few incomplete sentences implying that if he was "so important" why did no one from the jobsite contact him after he left.

The testimony Clark quoted occurred in response to questioning about various construction deficiencies raised by the City of Overland Park preventing RHF 1 from obtaining a temporary occupancy permit. As RHF 1 points out, this testimony confirms that Clark left the unfinished construction project in January 2017, which was after the promised completion date. Therefore we find substantial competent evidence supports a finding that Clark did not complete the construction on time under the terms of the agreement and Clark seems to admit he has no evidence showing otherwise.

11

C. *The damages are supported by substantial competent evidence and are not contrary to Kansas law.*

As far as the damages awarded by the district court on RHF 1's counterclaim, the court determined RHF 1 was entitled to $190,816 in damages related to the costs of curing construction deficiencies, code violations, and lost revenue resulting from Clark's failure to complete the building by the promised completion date.

Appellate courts examine the correct measure of damages under a de novo standard of review, viewing the evidence in the record in the light most favorable to the prevailing party. *Peterson v. Ferrell*, 302 Kan. 99, 106, 349 P.3d 1269 (2015). In general, the goal of awarding damages for a breach of contract is to put the nonbreaching party in the same position as if the breach had never occurred. 302 Kan. at 106. While damages need not be proven with absolute certainty, "'there must be some reasonable basis for computation which will enable the trier of fact to arrive at an approximate estimate thereof.'" 302 Kan. at 106 (quoting *Stewart v. Cunningham*, 219 Kan. 374, 381, 548 P.2d 740 [1976]).

As RHF 1 correctly notes, Kansas appellate courts have approved damage awards including lost profits resulting from a breach of contract, as well as the cost of any foreseeable incidental and consequential costs of the breach. See *Vickers v. Wichita State University*, 213 Kan. 614, 618, 518 P.2d 512 (1974) (lost profits); *Source Direct, Inc. v. Mantell*, 19 Kan. App. 2d 399, 408, 870 P.2d 686 (1994) ("Expectation damages usually consist of lost profits plus any incidental or consequential losses caused by the breach.").

The only authorities Clark provides on this issue are not on point because they pertain to the legal principle that a party to a contract cannot derive any benefit or escape liability after preventing performance by the other party. See *Dill v. Pope*, 29 Kan. 289, 291 (1883) ("[T]he rule is clear and well settled, and founded in absolute justice, that no

12

party to a contract can either prevent performance by another of any of its conditions, or, on the other hand, disable himself from complying with any condition, and derive any benefit or escape any liability thereby."); see also *Briney v. Toews*, 150 Kan. 489, Syl., 95 P.2d 355 (1939) ("[A] party to a contract will not be permitted, in the absence of justifiable cause, to interfere, hinder or prevent performance by the adverse party and claim benefits or escape liability on the ground of nonperformance."); *Supply Co. v. Cement Co.*, 91 Kan. 509, 512, 138 P. 599 (1914) (citing *Dill*).

Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). As a result, we find Clark abandons any challenge to the measure of damages. But as RHF 1 also correctly notes, the damages awarded by the district court are supported by the record. The district court found RHF 1 was entitled to receive:

- $40,000 for lost revenue due to the six-month delay in use of the first floor of the building for Revival's retail store;
- $86,750 in lost rental income for being unable to rent the second-floor apartments and charge a higher rate because Clark failed to provide the elevator; and
- $64,066 total to correct construction deficiencies and code violations attributable to Clark's nonperformance under the agreement.

Based on a review of the record, these amounts are reasonable and based on the evidence presented at trial. Taylor testified Revival's annual revenue to be around $80,000 based on previous years. She could not open the store until after obtaining a temporary occupancy permit in spring of 2017, which was about six months after Clark had promised to complete the building. As for the second-floor apartments, Taylor testified she could not rent the apartments until they were completed in September 2018.

13

The monthly rent for both apartments was $3,750, which meant she lost rent of $78,750 for the 21 months during which she could not rent the apartments. Taylor further testified she reduced the rent by $200 or $300 dollars because of the nonworking elevator, which resulted in an additional $8,000 lost rental income. As for the construction deficiencies and code violations, Taylor paid one contractor $10,379 to complete the first floor of the building, paid a second contractor $8,687 mainly to complete the second floor apartments, and would incur an additional $45,000 for existing and future repairs.

D. *The district court correctly determined that Clark was not entitled to judgment as a matter of law on his alter ego claim.*

Finally, Clark argues the district court erred by rejecting his claim for piercing the corporate veil of RHF 1 to find Taylor and Revival jointly and severally liable as its alter egos.

The district court first rejected this claim by granting a motion for judgment as a matter of law after Clark finished presenting evidence during the bench trial. At that time, the court concluded that Clark failed to present evidence to show improper commingling of funds because the evidence established that while Revival had "made payments out of necessity, because of the late timing of the submissions of draws or requests for draws," RHF 1 fully reimbursed Revival for those payments. Along with the district court's findings from the bench, the court later noted in its journal entry of judgment that any "issues relating to piercing the corporate veil have been rendered moot" because of the court's judgment on the merits in RHF 1's favor.

Although Clark fails to mention it, appellate courts review a district court's decision on a motion for judgment as a matter of law de novo by determining "whether evidence existed from which a reasonable jury 'could properly find a verdict for the nonmoving party.'" *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015). In

14

conducting this review, the appellate court applies a similar analysis as the district court and must resolve all facts and inferences that may reasonably derive from the evidence in favor of the nonmoving party. The court must deny the motion if reasonable minds could reach different conclusions based on the evidence. *Dawson v. BNSF Railway Co.*, 309 Kan. 446, 454, 437 P.3d 929 (2019). Moreover, a judgment on partial findings entered during a bench trial before the conclusion of a trial is governed by K.S.A. 60-252(c). The appellate court's function when reviewing a partial findings judgment is to determine whether the findings are supported by substantial competent evidence. If so, the appellate court must determine whether judgment as a matter of law was proper. *MFA Enterprises, Inc. v. Delange*, 50 Kan. App. 2d 1049, 1054, 336 P.3d 891 (2014).

As Clark fails to recognize, the alter ego doctrine is only used to impose liability on individuals who use a corporation as an instrumentality to conduct their own personal business. *Sampson v. Hunt*, 233 Kan. 572, 579, 665 P.2d 743 (1983). The power to pierce the corporate veil is to be exercised reluctantly and cautiously, but it can be used to avoid potential injury to third parties when fraud, illegality, or injustice has been worked through the legal fiction of a corporate identity. See *Pemco, Inc. v. Kansas Dept. of Revenue*, 258 Kan. 717, 723, 907 P.2d 863 (1995). There was no need to pierce the corporate veil here because Clark did not prove any of his asserted claims. Even now on appeal, Clark does not contest the district court's finding that he failed to meet the burden of proof on his breach of contract claim. As a result, he abandoned the primary cause of action that could lead to finding RHF 1 liable and potentially justify piercing the corporate veil to hold Taylor and Revival personally liable. We therefore agree with the district court that this finding is moot.

II. *Did the district court err by refusing to grant a trial continuance?*

Clark also contends the district court erred by refusing to allow him to present testimony from a notary at trial. While this argument also relates to the district court's

15

findings that Clark forged signatures on several documents, that issue is better addressed when discussing whether the court correctly denied his posttrial motion for reconsideration in Issue IV. Moreover, while Clark attempts to frame this action as the improper exclusion of evidence under K.S.A. 60-445, RHF 1 more accurately characterizes Clark's argument as an appeal from the denial of a trial continuance.

While Clark does not discuss it in his brief, the full context leading up to the district court's decision not to continue trial is helpful. On the third day of trial, RHF 1's counsel began questioning Taylor on cross-examination about whether Clark had forged Taylor's signature on documents in the past after she denied signing a contract hiring Andrews as a general contractor. Over Clark's objection, the district court admitted Exhibit 145, which Taylor testified was an affidavit prepared by Clark for a separate lawsuit. Taylor's notarized signature only appears on the last page of the document, separated from the contents of the affidavit itself. While Taylor agreed the affidavit contained her signature, she denied signing it and noted that it contained incorrect information about her college degree.

More than a month later, the parties reconvened on the fourth and final day of trial. During the rebuttal portion of Clark's case, his then-counsel offered a business records affidavit obtained from the notary who purportedly witnessed Taylor signing the affidavit introduced as Exhibit 145. RHF 1's counsel objected to the admission of the new exhibit on relevancy grounds, also asserting he would be unable to cross-examine the notary. The district court agreed, declining to admit the exhibit since the parties had not agreed to introduce the affidavit without establishing foundation. After presenting testimony from additional rebuttal witnesses, Clark's counsel requested that "ten minutes for a Zoom hearing" be scheduled for a future date to allow the notary to testify and establish the necessary foundation to admit the affidavit. Counsel further explained they had issued a subpoena for the notary, but she was not available to testify that day. The district court declined the request, explaining, "I'm not going to allow that. We've got to

be done. This case was supposed to be submitted in two days. We're on day four. You've gone way over the line."

Like previous issues, Clark's pro se appellate brief contains no recitation of any applicable standard of review to govern this issue. He simply acknowledges that the district court had discretion to exclude admissible evidence under K.S.A. 60-445, but contends that discretion did not allow the court to "deny evidence because we are out [of] time." Contrary to Clark's suggestion, the court did not exclude the affidavit because its probative value was outweighed by the risk of undue prejudice. Instead, the court declined to admit the exhibit because it lacked foundation, a ruling which Clark makes no attempt to challenge now.

While Clark is correct that the district court would not allow additional time for a notary to testify, that decision was not for evidentiary reasons. Rather, as RHF 1 points out, the court merely exercised its discretion to deny yet another continuance to prolong the proceedings. K.S.A. 2024 Supp. 60-240(b) gives a district court broad authority to "continue an action at any stage of the proceedings on just terms" for good cause. Appellate review turns on whether the district court abused its discretion in its ruling on the motion. See *Miller v. Glacier Development Co.*, 284 Kan. 476, 494, 161 P.3d 730 (2007). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022).

Particularly relevant to the circumstances here, K.S.A. 2024 Supp. 60-240(c)(1) requires parties to submit an affidavit when a motion for a continuance is "based on the absence of a material witness, document, thing or other evidence," but under subsection (c)(3) the court's decision remains discretionary "in all cases, regardless of compliance

17

with the provisions of this subsection." There is no indication in the record that Clark's counsel attempted to comply with this requirement, but, even so, the district court's decision not to grant a continuance was still a matter of discretion. Clark provides no authority demonstrating that denying a continuance violated his due process rights, nor does he explain why the notary was a material witness. As RFI 1 points out, Clark fails to explain how the notary's testimony would have made any difference at trial. For example, Taylor admitted she signed the page attached to the affidavit but claimed the document she signed which the notary notarized was not the affidavit introduced at trial. Clark did not proffer that the notary could testify as to the content of the document Taylor signed, but only as to the signature itself.

In short, Clark does not establish that the district court abused its discretion by denying his request for a continuance to allow the notary to testify.

III. *Did the district court violate Clark's rights?*

Clark's next argument challenges the district court's handling of his posttrial motions, encompassing four total issues in his brief. In sum, Clark contends the district court violated Rule 170 by entering the final journal entry without holding a hearing on his purported objections, as well as the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution by refusing to hold hearings over Zoom on his posttrial motions.

*Additional facts*

To better understand Clark's claims of error, it helps to clarify the relevant posttrial events by putting them in context. First, in January 2023 after the district court's journal entry of judgment, RHF 1 timely moved for attorney fees, which Clark opposed. The

district court held a hearing on the motion over Zoom in May 2023, ultimately granting RHF 1's request and directing counsel to submit a journal entry under Supreme Court Rule 170. RHF 1 timely submitted the proposed journal entry, then Clark timely filed a written response. Yet, Clark's pro se response stated only that he was "unable to comment" on RHF's proposed journal entry until the court reporter provided him with a copy of the transcript for the May 2023 hearing.

Then, on the morning of July 11, 2023, three filings occurred in rapid succession. First, Clark moved for a change of judge under K.S.A. 20-311d, asserting he "does not believe that the Judge can afford Plaintiff a fair trial and requests the Judge to recuse himself in the interest of Justice." While Clark does not bring forward any claim related to this motion on appeal, it bears mentioning because it played a part in the district court's preference for in-person hearings on other motions Clark would later file.

An hour later, the second filing was the district court's journal entry of judgment adopting RHF 1's proposed journal entry on the attorney fees award. In the order, the court explained that after reviewing the pleadings, it had determined Clark "wholly failed to identify any purported objections to the form of the journal entry" and that oral argument would not materially aid the court in disposing of the dispute over the journal entry. Thus, the court ordered Clark to pay $102,070.99 in attorney fees to RHF 1 and confirmed the judgment was now final.

About 20 minutes later, the third filing was Clark's "Motion Objecting to the Courts Violation of Supreme Court Rule 170 and Violation of Plaintiffs Constitutional Rights Under Due Process and the Americans with Disability Act 42 U.S.C. 12132 & 42 U.S.C. 12134(a)." In the filing, Clark referenced an email from the previous day in which the judge advised the parties that while the court's standard process for handling Rule 170 objections required in-person hearings, "the Court will rule on the issues in accordance with [Supreme Court] Rule 133 [2025 Kan. S. Ct. R. at 210] without further hearing"

19

after reviewing Clark's "'objection.'" Clark then asserted that there had been no efforts to confer between the parties, which violated Supreme Court Rule 170(d)(2). Clark further contended that the court improperly issued a ruling under Rule 133 and believed that the court was only doing so to "punish" Clark for requesting a Zoom hearing.

Clark's next filing was a "Motion for New Trial to Alter or Amend Judgment and/or Motion to Reconsider" filed on August 1, 2023, along with a lengthy brief detailing his objections to nearly all the district court's factual findings. The pleading also referenced new evidence in the form of sworn statements by forensic document examiners Clark hired after the court entered judgment, which he would use to show witnesses had provided false testimony and conspired against him to commit fraud. Based on the register of action, it appears from the record that the district court scheduled a hearing on Clark's posttrial motions to occur in September 2023, then reset the in-person hearing for October 10, 2023.

The next pleading relevant to this issue occurred on September 29, 2023, which was Clark's "Motion to Set Aside All in Person Hearings and Move the Court to Approve Plaintiffs Request for Only Zoom Hearing in Accordance with the Americans with Disabilities Act." In short, Clark urged the district court to hold the upcoming hearing over Zoom as an ADA accommodation and the Kansas Supreme Court orders allowing remote hearings when a party expresses health concerns because of the COVID-19 pandemic.

Because of Clark's request, the district court converted the October 2023 hearing to provide a Zoom option "[i]n the interest of justice and to ensure that Mr. Clark had a full and fair opportunity to appear and articulate his position" and sent the Zoom link to the parties before the hearing. Clark did not appear on the call or in person at the scheduled time. After waiting an additional 15 minutes, Clark still did not appear. Accordingly, the court announced it was denying Clark's posttrial motions and entered a

journal entry the following day formally denying Clark's motions for the reasons expressed at the hearing. Relevant to this issue, the court reiterated its belief that Clark failed to lodge a legitimate objection to the proposed journal entry on the attorney fees award and thus was not entitled to a hearing under Rule 170.

Clark then moved to set aside the October 2023 journal entry, contending he did not receive proper notice of the Zoom hearing because he was only notified by email less than four hours before the hearing. The district court promptly denied Clark's motion to set aside the journal entry, construing it as a request filed under K.S.A. 2023 Supp. 60-260. The court concluded that Clark failed to appear either in person or by Zoom and otherwise showed no legitimate basis for setting aside the court's ruling.

*Analysis*

A. *The district court did not violate Supreme Court rules.*

Beginning with Clark's claim that the district court violated Kansas Supreme Court Rule 170 by failing to hold a hearing on his objections to the proposed final journal entry, the Kansas Supreme Court has said questions requiring interpretation of Supreme Court rules present a question of law subject to unlimited appellate review. See *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013).

Kansas Supreme Court Rule 170(d)(3) states: "If—after reasonable effort to confer—the parties have not agreed on the terms of the order, the drafter must submit the original draft and the objection to the court and the court must settle the order, with or without a hearing." (2025 Kan. S. Ct. R. at 230).

Although this claim relates to a proposed journal entry involving attorney fees, Clark does not raise any objections related to the court's substantive decision to award

21

attorney fees to RHF 1. His only arguments are essentially that the court entered the order (1) without holding a hearing and (2) despite the parties not making reasonable efforts to confer. But contrary to Clark's first point, Rule 170(d)(3) (2025 Kan. S. Ct. R. at 230) explicitly allows a district court to settle any objections "with or without a hearing." To the second point, even without Clark having an opportunity to confer with RHF 1's attorney, the district court ultimately considered Clark's pleading and determined his only complaint related to not having access to a copy of the transcript for the May 2023 hearing on the request for attorney fees. Yet even now, he does not articulate any specific objection to the contents of the journal entry, despite having been given a chance to review that transcript. In sum, Clark does not show the district court erred by entering the final journal entry in July 2023 in violation of Rule 170.

## B. *The district court did not refuse to hold a Zoom hearing.*

Clark's other two claims assert the district court violated the ADA and his constitutional due process rights by refusing to grant his requests for Zoom hearings. Other than cursory references to the ADA prohibiting discrimination based on a person's disability, Clark's appellate brief is devoid of any relevant legal authorities to support his position or any explanation of the legal standards governing ADA or due process violations. Put simply, Clark's brief is so inadequate on these points and his arguments so lacking that we find these claims abandoned. See *Williams*, 307 Kan. at 977.

Moreover, as RHF 1 points out, Clark misstates the facts on this point because the district court provided notice of the October 2023 hearing on September 13, 2023— according to the register of action included in the record—but then honored his request by providing an option to appear at the hearing by Zoom. See K.S.A. 77-518(a) (requiring reasonable notice at least 10 days prior to a hearing). Contrary to his suggestion, the court's prior notice was sufficient and Clark provides no authority stating otherwise. The district court's decision to allow him to appear at the hearing by Zoom

22

would not require additional notice because it was not a separate or reset hearing. Yet Clark failed to appear at the hearing in any capacity, despite receiving adequate notice about a month earlier.

IV. *Did the district court abuse its discretion in denying Clark's motion for reconsideration?*

Finally, Clark argues the district court erred by denying his motion for reconsideration because it was untimely. Although he does not explicitly frame them together, this issue is closely related to his claims contesting the court's findings that he forged several exhibits because the new evidence upon which he relies to refute those findings was provided in his posttrial motion for reconsideration. We review a district court's denial of a motion for reconsideration for an abuse of discretion. *AkesoGenX Corp. v. Zavala*, 55 Kan. App. 2d 22, 30-31, 407 P.3d 246 (2017).

At the outset, we agree with Clark that the district court erred in determining his motion for reconsideration was untimely filed. Under K.S.A. 2024 Supp. 60-259(f), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." While the court was correct that Clark did not file his motion within 28 days of the January 2023 journal entry, that order specifically retained jurisdiction to enter a final judgment following any requests for attorney fees. The court's July 2023 journal entry adopted its prior order and imposed attorney fees, deeming the ruling to be a final judgment. As a result, Clark's motion for reconsideration—filed 21 days later—was timely filed.

Clark also asserts the district court's January 2023 journal entry was not a final decision because the court made no express determination "that there is no just reason for delay" under K.S.A. 2022 Supp. 60-254(b). While Clark is correct that the January 2023 journal entry includes no such determination, there is no tolling problem here because, as

23

already discussed, the judgment was not final until the court filed the July 2023 journal entry and the motion for reconsideration was timely filed.

That said, the district court addressed the merits of Clark's motion anyway, concluding that he showed "no basis for relief under any of the provisions. And that the judgment is supported by substantial evidence in the record." After the hearing, the court entered a journal entry formally denying Clark's motion for the reasons expressed at the hearing, then later denied a motion to set aside the October 2023 journal entry for similar reasons.

Although Clark directly appeals the district court's decision, he does not explain in his brief how the court abused its discretion in denying the motion. He references several snippets of trial testimony, which mostly relate to his primary argument that he was not specifically hired to be a general contractor pursuant to any written contract. As covered extensively above, the district court's breach of contract judgment in RHF 1's favor did not stem from a finding that Clark agreed, orally or in writing, to be the general contractor. But substantial competent evidence supports the court's finding that an oral contract existed to support RHF 1's counterclaim, and no part of the testimony Clark mentions in this section of his brief contradicts that conclusion. Clark fails to persuasively connect the evidence mentioned in his brief to show factual or legal error, or to explain how the court acted unreasonably in declining to reconsider its judgment.

Likewise, Clark fails to show the district court abused its discretion by finding the forensic document examiner reports included with his motion did not justify reconsideration of the judgment. Under K.S.A. 2024 Supp. 60-259(a)(1)(E), a district court can grant a new trial when a party comes forward with "newly discovered evidence that is material for the moving party which it could not, with reasonable diligence, have discovered and produced at the trial." The only explanation Clark gave to explain how the forensic document examiner reports could be considered "newly discovered evidence" is

24

in an affidavit attached to his motion stating that he "started doing research after the Judgment was made public" and then "learned what Forensic Document Examiners were." This explanation falls short because it shows Clark is merely trying to relitigate the issues after realizing how the court weighed the evidence. A realization that evidence could have helped his case does not make the evidence newly discovered. Moreover, the Kansas Supreme Court has consistently recognized that evidence that merely tends to impeach or discredit the testimony of a witness is ordinarily not grounds for granting a new trial. See *State v. Ashley*, 306 Kan. 642, 650, 396 P.3d 92 (2017); *State v. Richard*, 235 Kan. 355, 363, 681 P.2d 612 (1984).

For these reasons, we find the district court did not abuse its discretion by denying his motion to reconsider the judgment. Accordingly, we affirm the district court's judgment.

Affirmed.